## TENANT vs. HAMBLETON.

1811.
DEC. (E. S.)

Tenant
vs
Hambleton

To prove the location and survey of a tract off land calling to begin at the end of one of the lines of another tract, and to run to and intersect other tracts, &c. and that it began at and run to particular places described on the plots, parol evidence of the surveyor, who originally located and surveyed the tract of land, was admitted as legal and competent.

If certain tracts of land called for by a junior survey were surveyed by course and distance when the junior survey was made, then the grant on such junior survey passed no other land than was included by such survey.

APPEAL from *Talbot* County Court. This was an action of trespass *quare clausum fregit.* The land, upon which the trespass was alleged to have been committed, was called *Knave Deceived.* The plaintiff, (now appellant,) at the trial gave in evidence the certificate and patent of *Knave Deceived,* surveyed on the 10th of March 1796 for, and granted to the plaintiff, on the 7th of April 1797, "lying on the south side of *Saint Michael's* river, and beginning at a small white oak, marked with six notches, standing in the woods at the end of the 17th or N W course of 75 perches of a tract of land called *Fiddeman's Discovery,* which oak bears N 77 degrees 15 minutes E, distant 45 perches from the division post between *Daniel Fiddeman* and *John Rolle,* and running with *Fiddeman's Discovery* N E 167 perches, to a tract of land called *Elliott's Folly,* then with said *Elliott's Folly* reversed S 25 degrees W 167½ perches, to the 16th course of *Fiddeman's Discovery,* then therewith S W 23 perches to the end of said line, then with the 17th course aforesaid to the first mentioned tree, containing and laid out for 57 acres." The plaintiff also gave in evidence the several certificates and patents of the tracts of land called *Cambridge,* (surveyed the 6th of October 1662, for *William Hambleton;*) *Martingham Enlarged,* (surveyed the 3d of May 1790 for, and granted the 5th of June 1793 to, *William Hambleton;*) *The Meadows,* (surveyed the 25th of May 1778 for *Matthew Tilghman,*) and *Elliott's Folly,* (surveyed the 26th of November 1685, for *Edward Elliott,*) in support or illustration of the several locations made on the plots returned in the cause. The defendant then gave in evidence the certificate and patent of the tract of land called *Neglect,* also located on the plots, surveyed the 20th of July 1795 for, and patented to *William Hambleton,* on the 29th of May 1797, "lying on the S. side of *Saint Michael's* river, beginning at the end of 200 perches on the S E line of *Martingham Enlarged,* being the 2d line of said land, and runs from thence S E 17 perches, till it intersects the N E line of a tract of land called *Elliott's Folly,* then with said line N E 48¼ perches till it intersects the first line of a tract of land called *The Meadows,* then with said line S 86 degrees

1811.

Tenant
vs
Hambleton

30 minutes W 32 perches, then N N E with the same land 58 perches, to the land called *Martingham Enlarged*, then with said land N 78 degrees 50 minutes W 5½ perches, then with a straight line to the first beginning, containing seven acres." The defendant also gave in evidence, in support of the location thereof made by him on the plots, the certificate and patent of the tract of land called *Fiddeman's Discovery*, surveyed on the 4th of December 1739 for, and granted on the 5th of August 1742 to, *Richard Fiddeman*. The plaintiff then offered evidence to prove, that the defendant was the surveyor who originally located and surveyed the tract called *Neglect*, for *William Hambleton* the patentee thereof; and for the purpose of proving the original location and survey of that tract, and that it began at the place described on the plots by the black letter F, and from thence run to the place described on the plots by black letter G, to the tract of land called *Elliott's Folly*, as located by the plaintiff, and from thence run with *Elliott's Folly* to the place described on the plots by black letter H, to the tract called *The Meadows*, as located by the plaintiff, and from thence, &c. &c. he offered to read in evidence the following written deposition of *Edward N. Hambleton*, the defendant, which had been before sworn to and subscribed by him, and taken by the sheriff of *Talbot* county on the 5th of April 1799, in an action then depending in the county court between *William Hambleton*, plaintiff, and *Samuel Tenant*, defendant, viz. The witness summoned and sworn at the request of the defendant, "deposeth and saith, that he the deponent sometime past run out a tract of land called *Neglect*, but the deponent cannot tell at this time the exact spot where he began the land called *Neglect*, but for further information refers to the certificate on the survey. And the deponent further says, that he cannot recollect what allowance was made on laying down the tract of land called *Martingham Enlarged*, and for further information refers to the certificates of said lands called *Martingham Enlarged* and *Neglect*. Question—Did you measure the first line of *Neglect*, and find that 17 perches intersected the N E line of *Elliott's Folly* as you then located *Elliott's Folly*? The deponent answers, he did. Question—Did you measure the second line of *Neglect* along with *Elliott's Folly*, as you then located *Elliott's*

1811.

Tenant
vs
Hambleton

*Folly*, and find that 48¼ perches intersected the first line of the land called *The Meadows*, as you then located *The Meadows?* The deponent answers, he did. *Question*— Did you measure the third line of *Neglect* with the first line of *The Meadows*, and find it 32 perches to the end of the first line of *The Meadows?* The deponent answers, he did. *Question*—Did you measure the fourth line of *Neglect*, still with *The Meadows*, and find it 58 perches to the land called *Martingham Enlarged?* The deponent answers, he did; and that the above answers are intended to correspond with the certificate of *Neglect*, as he cannot charge his memory with any of the above questions. *Question*—How did you locate *Elliott's Folly* when you made this survey called *Neglect*; did you lay it down course and distance merely from the first boundary? The deponent answers, he doth not recollect. *Question*— Was you governed by any other boundary but the beginning boundary in laying down *Elliott's Folly?* The deponent answers, he doth not know the beginning boundary of *Elliott's Folly*. *Question*—Was you not shown a boundary of *Elliott's Folly?* The deponent answers, he was shown a boundary of *Elliott's Folly*, but he doth not recollect by whom. *Question*—Was you directed in what manner to lay down *Elliott's Folly* by the plaintiff in this cause? The deponent is not certain, but believes he was. *Question*—Did you run to any more than one boundary when you laid down *Elliott's Folly?* The deponent cannot recollect, but refers to the certificate of *Neglect*. *Question*—Who were your chain-carriers when you made the survey called *Neglect?* The deponent says *Francis Sinclair* and *James Harrison*. *Question*—Did you give a tract of land called *Fiddeman's Discovery* any location at all when you made this survey called *Neglect?* The deponent answers, not that he recollects. *Question*— Have you any knowledge of a corner tree, or any other mark of a tract of land called *Cambridge*, the first boundary excepted? The answer is, he hath not." The defendant objected to the reading of this deposition, alleging that it was illegal and incompetent evidence, and that it was in the nature of *parol evidence* tending to contradict, or substantially vary, the legal operation of the patent of the land called *Neglect*. The County Court, (*Earle*, Ch. J.) sustained the objection, and rejected the

1811.

Tenant
Vs
Hambleton

evidence. The plaintiff excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before POLK, NICHOLSON, and JOHNSON, J.

*Bullitt* and *Goldsborough*, for the Appellant, said that the question depended on the true location of the lard called *Neglect*, that there was a latent ambiguity in the grant of that land, and therefore that the parol evidence offered ought to have been received to explain it. They referred to *Peake's Evid.* 115, 123.

*Hammond* and *Kerr*, for the Appellee, referred to 3 *Woodes.* 327, 328. 2 *Esp. Dig.* 506, 507, 521, 525, 526, 527. *Meres, et al. vs. Ansell, et al.* 3 *Wils.* 275. *Pow. on Cont.* 481, 482, 485. *Brown vs. Selwyn, Ca. temp. Talb.* 240. *Lee vs. Biddis,* 1 *Dall. Rep.* 175. *Bond vs. Haas's Ex'rs.* 2 *Dall. Rep.* 138. *Clarke vs. Russell,* 3 *Dall. Rep.* 415. *Jackson vs. Shearman,* 6 *Johns. Rep.* 19. *Spalding's Lessee vs. Reeder.* 1 *Horr. & M'Hen.* 187. *Rich vs. Jackson,* 4 *Brown's C. C.* 514. *Land Hold. Ass.* 402. *Jackson vs. Cator,* 5 *Ves.* 688. *Jackson vs. Bowen,* 1 *Caine's Rep.* 358. 2 *Bac. Ab.* tit. *Evidence,* (G). *Bull. N. P.* 296, 297. *Finney vs. Finney,* 1 *Wils.* 84. *Mease vs. Mease, Cowp.* 47. *Preston vs. Morceau,* 2 *W. Blk. Rep.* 1249. *Butcher vs. Butcher,* 4 *Bos. & Pull.* 115, 116. *Lord Irnham vs Child,* 1 *Brown's Ch. Ca.* 93; and *Dougherty vs. Denny,* 3 *Harr. & M'Hen.* 430.

THE COURT were of opinion, that if the different tracts of land called for by *Neglect,* were surveyed by course and distance, when that survey was made, that the grant of that tract passed no other land than was included in the survey as so made, and that the parol evidence in relation to the survey ought to have been received.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.